## CORLL v. MASURITE EXPLOSIVE CO.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1908.)

### No. 1,798.

MASTER AND SERVANT (§ 285*)—ACTION FOR INJURY TO SERVANT—SUFFICIENCY OF EVIDENCE.

Evidence considered, in an action by an employé against the master for a personal injury, and *held* sufficient to entitle the plaintiff to have submitted to the jury the question whether or not the injury was proximately caused by a defective appliance, for the condition of which defendant was responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1011–1014; Dec. Dig. § 285.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Charles Fillius, for plaintiff in error.

J. C. Brooks, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The defendant is a corporation engaged in manufacturing and selling masurite, a high explosive, and detonating caps to explode it. The caps are each $1\frac{1}{4}$ inches long and one-quarter of an inch in diameter. Each cap contains two copper wires, 8 feet long, which pass through the priming charge and are connected at the ends by a piece of platinum wire. The priming charge is sealed into the cap by a mixture composed largely of sulphur. The detonating cap, or, as it is commonly called, the exploder, is placed within the explosive, and the ends of the copper wires are attached to longer wires connected with a powerful electric battery. A heavy current passing from this battery through the detonater would explode it, and with it the explosive itself.

Before selling detonators, the Masurite Company tested them, using for the purpose a delicately constructed instrument, called an "ohmmeter." By the movement of an indicator on a dial (covered with glass) this device measures and shows the force of the current of electricity which is produced by the battery and passed through the resistance coil. In testing a detonator, the exposed ends of its wires were at the same time placed upon the two posts of the ohmmeter, thus sending a current of electricity from the battery of the ohmmeter through the platinum wire of the detonator, which is used to explode the detonator when a powerful current is applied later for that purpose. If the ohmmeter, used as described, should register on the dial

a certain number of ohms, it would show a complete electric connection between the two copper wires in the detonator, through the platinum wire which joins them. But the current, passing from the ohmmeter through the detonator, would not be sufficient, if normal, to heat the platinum wire so as to explode the charge in the detonator, and the detonator would be accepted as good. On the other hand, if the indicator on the dial did not register any electric current, it would show there was, for some reason, an incomplete electric connection, and the detonator would be rejected as not good.

The plaintiff had been at the work of testing detonators for three or four weeks when the accident occurred. Before that she had been employed at the factory for something over a year, working at making, gluing, and rolling paper shells, and then packing them with masurite. She had only been working three or four weeks in testing detonators, for which an ohmmeter was used. Her knowledge of the ohmmeter, its method of construction and operation, and the dangers incident to its use, were necessarily limited.

The accident grew out of the explosion of a detonator shortly after an ohmmeter had been used. This ohmmeter had been knocked off a table and fallen so hard that the glass over the dial was broken, and there appeared to be a question whether it had not been injured and was unfitted for use. There was, however, an attempt to use it, and when the dial did not show any current from the ohmmeter, and the plaintiff, in the belief that the ohmmeter was not working, but needed examination by the foreman or superintendent in charge, laid the detonator, or several of them, on the table, there was an explosion, and she was seriously injured.

In handling this situation, the court below in its charge called attention to the fact that the explosion was either instantaneous or delayed. If instantaneous, the plaintiff was guilty of contributory negligence, because she had not placed the detonator in a bomb proof, used to protect those near from an explosion, as she had been told to do, and it was this negligence which caused the injury.

On the other hand, the court charged the jury that there was no testimony justifying the submission to them of the question whether there was a delayed explosion, and, since there was no substantial testimony to support the claim that the explosion was a delayed one, the court could not leave the decision of that fact to the jury, and could not base a verdict on the jury's finding that the explosion was delayed. The court charged the jury, in addition, that the question could not be left to them whether a broken ohmmeter was not the proximate cause of the explosion, and accordingly directed a verdict for the defendant.

We think the court failed to take a proper view of the part the ohmmeter played in the accident and should have played in the case. It was a delicate electrical instrument, designed and employed to regulate and measure the current of electricity which was produced by its battery and permitted to pass through its resistance coil. When used to test a detonator, a very light current was allowed to pass, so light as not to heat the platinum wire, so there was no danger in using it, but heavy enough to show that the current passed, so as to demon-

strate that there was sufficient electrical connection, and when the detonator should be subsequently put in use, and a heavy current applied, it would pass through the platinum wire and explode the detonator, and along with it the charge of high explosives intended to be set off. In order that an ohmmeter should perform its service in testing detonators, it was necessary, in the first place, that its parts should be properly adjusted and in perfect order, so that only a limited current should be produced and allowed to flow through, and, in the next place, that the force of the current should be measured and exhibited with accuracy. The testimony shows that the ohmmeter was defective in both requirements. The delicate instrument had had a heavy fall, and it had not been examined or repaired, although the plaintiff was insisting on something being done before using it. It seems she understood the situation better than the defendant company and its officers. The attempt to use the unrepaired ohmmeter was unavailing. The indicator, which was expected to show the force of the current passing through the detonator, either did not move at all or moved in such an uncertain way as to show the ohmmeter was out of order. The young women who were engaged in testing, or trying to test, the detonators, concluded that they had not been tested, and that the ohmmeter would first have to be repaired, so the detonators, after an attempt had been made to test them, were laid aside on the table until the ohmmeter could be examined, and, if necessary, repaired. There was testimony tending to show that, when the attempt was made to test the detonators by the use of the ohmmeter, they were placed in a bomb proof, and were only laid upon the table after the conclusion had been reached that the ohmmeter was not working and would have to be repaired. Two or three seconds after the detonators were laid on the table, the explosion occurred, and the plaintiff was badly hurt. In its charge to the jury, the court below stated there was no testimony showing that a delayed explosion had ever taken place, although Prof. Maberry thought it might take place and explained why; but it seems to us that the testimony is clear and positive upon the point that the explosion which caused the injury was a delayed explosion. It seems, however, that the court below demanded that there be proof of a certain kind of explosion, and was not satisfied that there was any evidence that the kind of explosion described by Prof. Maberry had taken place. The professor went to the trouble of withdrawing and examining charges in certain detonators which he got from the Masurite Company, and he was of opinion that such charges might be gradually heated and ultimately exploded by the passage of a current of electricity through the platinum wire.

It is to be noticed that under normal conditions, with the use of an ohmmeter in order and accurate, the platinum wire would not be heated so as to have any effect upon the charge in detonator. To heat the wire to a point which would affect the charge and gradually cause combustion and explosion—in other words, bring about a delayed explosion—it would be necessary to reduce the resistance in the ohmmeter, and thus permit a heavier current to pass through the platinum wire in the detonator; and it would be necessary to do this at a time when for some reason the current had been increased, at a time when

the ohmmeter would not disclose it. Under the circumstances, we cannot escape the conclusion that the plaintiff was not permitted to present her full case to the jury, and have the jury pass upon the question whether the use of the broken ohmmeter was not the proximate cause of the explosion and the resulting injury. We think she was entitled to be provided with an ohmmeter in good order, and, when the instrument was knocked off the table and broken, she was entitled to have it examined by a competent person, and, if injured, repaired, so that she could rely upon its accuracy, both in restraining and reducing the force of the current which passed through it and in measuring and recording its force. The current created and allowed to pass through the detonator before the time came to explode it was regulated by the ohmmeter. It was limited in strength to a perfectly safe current. But the trouble in this case was that the injury to the ohmmeter let the current loose and altered it so it was able to bring about a delayed explosion without in any way indicating the fact. This is not a case where proper steps could not have been taken to protect the employé. If the only explosion, or apprehended explosion, was one produced solely by an unknown priming charge, for which it alone was responsible, it might be impossible to guard the employé by a bomb proof; but in this case it was the broken ohmmeter which brought about the trouble, or at least there was evidence to submit to the jury upon that point. If it did, that was the proximate cause, which might be grounds for a recovery.

Judgment reversed, and the case remanded for a new trial